NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DUNKIN' DONUTS, INC., : | |
| Plaintiff, : | **OPINION** |
| v. : | Civ. No. 05-387 (WHW) |
| ARKAY DONUTS, LLC, ANAAR : DONUTS, LLC, NILESH MEHTA, : and RASHMITKANT MEHTA, : | |
| Defendants. : | |

**Walls, Senior District Judge**

Plaintiff Dunkin' Donuts, Inc. ("plaintiff") moves before this Court for an order adjudging defendants Arkay Donuts, LLC, Anaar Donuts, LLC, Nilesh Mehta and Rashmitkant Mehta (collectively, the "defendants") in contempt of the Judgment by Default and Permanent Injunction dated August 24, 2005 (the "August 24th Judgment"), and to enjoin defendants from transferring assets to third parties or further encumbering their assets for thirty days until after defendants fully comply with their obligations under the Information Subpoena. Defendants move to vacate the default judgment and for the return of levied monies. The motions are decided without oral argument, pursuant to Fed. R. Civ. P. 78.

**FACTS AND PROCEDURAL BACKGROUND**

The majority of facts in this matter are set forth in Judge Bissell's opinion of April 13, 2005, granting the plaintiff's motion for a preliminary injunction, Dunkin' Donuts v. Arkay Donuts, LLC, et al., No. 05-387, slip op. at 1 (D.N.J. April 13, 2005), and the judgment by

**NOT FOR PUBLICATION**

default and permanent injunction entered by Judge Bissell on August 24, 2005, <u>Dunkin' Donuts v. Arkay Donuts, LLC, et al.</u>, No. 05-387 (D.N.J. August 24, 2005) (final judgment by default and permanent injunction). Those facts are incorporated by reference, and the facts recited herein pertain specifically to the pending motions.

Plaintiff entered into two franchise agreements with defendants on December 30, 2003 for defendants to operate doughnut stores located at 895 Franklin Avenue in Newark, New Jersey, and at 147 Route 46 East in Parsippany, New Jersey. The two franchise agreements provided defendants a license to use the Dunkin' Donuts trademarks, trade name, and trade dress in accordance with the terms of the agreement.

Plaintiff alleges that defendants materially breached their franchise agreements and failed to pay and perform the following obligations: (a) payment of $7,182.65 (estimated) due for the Newark location; (b) payment of $5,052.85 (estimated) due for the Parsippany location; and (c) preservation and making available to Dunkin' Donuts all records for the current fiscal year and the three immediate-past fiscal years. Plaintiff claims that notices to cure were repeatedly sent to the defendants regarding these defaults, from April through November of 2004, but that defendants failed to comply.

Notices of termination of the franchise agreements were issued to the defendants on December 13, 2004, citing the defendants' chronic failure to "pay amounts due requiring multiple notices to cure during the past twelve months." The notices added the following:

> Dunkin' Donuts demands that you, your agents, servants and employees take such actions as are necessary to comply with your post-termination obligations as set forth in the Franchise Agreement including, but not limited to, immediately ceasing the use of any methods associated with DDI, ceasing the use of any and all

-2-

**NOT FOR PUBLICATION**

> trademarks, service marks, and all other proprietary marks and methods of trade identifications, and all trade secrets of DDI, confidential information, signs, symbols, and slogans belonging to DDI.  We further demand that you immediately cease use of, and return all, DDI's manuals to DDI and comply with the post-termination obligations set forth in the Franchise Agreement.  In addition, please make immediately [sic] arrangements with your Business Consultant to immediately de-identify your location of all signs, symbols, slogans and proprietary marks belonging to DDI.
>
>       \*  \*  \*
>
> You remain obligated for all amounts already due, or that will become due, by virtue of your continued operation of the franchised business. Any and all amounts paid by you, or to be paid by you, while operating during this period may be accepted by DDI without waiver of its rights and claims, including the right to terminate the Franchise Agreement or seek injunctive relief.  Any dispute that you raise with respect to the amounts in default, or any claims that you might purport to have against DDI will not excuse your obligation to pay the amounts owed to DDI as set our herein above; nor will such claims excuse your performance of your obligations under the Franchise Agreement.
>
> This Notice requests that you surrender premises to the undersigned.  All contacts regarding the status of your Franchise Agreement and Sublease should be conducted only with this writer. ...

A supplemental notice of termination was sent to defendants on January 14, 2005, stating that the franchise agreements would be terminated on January 18, 2005 at 12:01 A.M.

Plaintiff filed a complaint against defendants on January 20, 2005.  Count one alleges a material breach of the franchise agreements, and count two alleges violations of the Lanham Act. On March 14, 2005, plaintiff moved for a preliminary injunction against the defendants, pursuant to Fed. R. Civ. P. 65(a), to prevent defendants from infringing the Dunkin' Donuts trademark.

On April 13, 2005, Judge Bissell granted the plaintiff's motion for a preliminary injunction.  Upon request of plaintiff, the clerk of the court entered default against defendants on May 26, 2005.  Defendants failed to comply with the preliminary injunction order, and the final

**NOT FOR PUBLICATION**

judgment and permanent injunction was entered on August 24, 2005 by Judge Bissell, following an order to show cause hearing.  The August 24th Judgment 1) awarded damages for past and future royalties and advertising fees to the plaintiff in the amount of $640,246.43; 2) awarded damages to the plaintiff in the amount of $24,168.87 for violation of the Lanham Act; 3) permanently enjoined defendants from using the plaintiff's confidential information, trademarks and proprietary rights; and 4) permanently enjoined defendants from operating a Dunkin' Donuts franchise.  Judgment was entered for plaintiff in the amount of $664,415.30, which was transferred for collection to the Superior Court of New Jersey.  On November 18, 2005, the Superior Court of New Jersey issued a writ of execution against the property of defendants in the amount of $664,468.30.  Pursuant to that writ, $344,064.67 have been seized from defendants.

Plaintiff first moved for this Court to find defendants in contempt on September 20, 2005, and this Court issued a second order to show cause why the defendants should not be found in contempt on November 23, 2005.  Plaintiff asserts that defendants continue to hold themselves out to the public as Dunkin' Donuts shop operators, and have notice of their obligations to cease and desist.

On January 23, 2006, plaintiff again moved to adjudge defendants in contempt of the August 24th Judgment, and requested that defendants be enjoined from transferring assets to third parties or further encumbering their assets until 30 days after defendants respond to the Information Subpoena.  On January 25, 2006, defendants filed a motion to vacate default judgment and compel the return of levied monies.

**I.      Plaintiff's Motion to Adjudge Defendants in Contempt and to Enforce Plaintiff's Rights**

-4-

**NOT FOR PUBLICATION**

Plaintiff seeks to adjudge defendants in contempt of the August 24th Judgment, and also seeks to enforce the order from this Court: (1) prohibiting Defendants from "holding-over" the operation of defendants' terminated Dunkin' Donuts business in violation of its post-term covenants against competition and the Lanham Act; and (2) prohibiting defendants from using Dunkin' Donuts confidential information in the operation of a competitive business. Plaintiff also requests that defendants be enjoined from transferring assets to third parties or encumbering their assets until thirty days after they have complied with their obligations under the Information Subpoena.

    A.    <u>Standard</u>

To establish civil contempt against a party, the Court "must find that (1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order." <u>John T. ex rel. Paul T. v. Delaware County Intermediate Unit</u>, 318 F.3d 545, 552 (3d Cir. 2003) (quoting <u>Harris v. City of Philadelphia</u>, 47 F.3d 1311, 1326 (3d Cir.1995)). However, "[t]he validity of the underlying order is not open to consideration." <u>Harris</u>, 47 F.3d at 1326 (citations omitted). Furthermore, "[a] contempt citation should not be granted if 'there is ground to doubt the wrongfulness of' the [party]'s conduct." <u>Id</u>. (citation omitted). The Third Circuit requires the plaintiff to present "clear and convincing evidence" to satisfy its heavy burden of showing that a defendant is guilty of civil contempt. <u>Schauffler on Behalf of Nat'l Labor Relations Bd. v. Local 1291, Int'l Long-Shoremans Ass'n</u>, 292 F.2d 182, 189-90 (3d Cir.1961).

    B.    <u>Analysis</u>

**NOT FOR PUBLICATION**

Defendants do not dispute that they had notice of the entry of default and permanent injunction, or that they have not complied with the August 24th Judgment. Rather, defendants oppose the motion on the grounds that 1) no valid court order existed, inasmuch as plaintiff is not entitled to an award of damages for future lost profits; 2) the defendant lacked intent or willfulness to disobey the order; and 3) the hardships with which Mr. Mehta, the principal of defendants, was forced to deal during the months wherein the Court entered its orders favor lesser sanctions.

Defendant principally argues that no valid court order existed because the plaintiff is not entitled to an award of future lost profits. That argument will be discussed in depth in the discussion of the defendants' motion to vacate the default judgment. For purposes of the plaintiff's motion to adjudge the defendants in contempt, however, the law is clear that "the merits of the underlying order may not be called into question in a post-judgment civil contempt proceeding." Halderman v. Pennhurst State School & Hospital, et al., 673 F.2d 628, 637 (3d Cir. 1982), cert. denied, 465 U.S. 1038 (1984) (citing Oriel v. Russel, 278 U.S. 358 (1929)). Accordingly, for purposes of this motion to adjudge defendants in contempt, this Court may not accept the defendants' argument that the award of future lost profits negates the existence of valid court order.

With respect to their second argument, that they lacked intent and willfulness, defendants acknowledge that "willfulness is not a necessary element of civil contempt," and that intent and willfulness are relevant "only insofar as [they] pertain to the extent of the sanction to be imposed." Harley-Davidson, Inc. v. Morris, 19 F.3d 142, 148-49 (3d Cir. 1994) (citations

**NOT FOR PUBLICATION**

omitted). Moreover, the Court does not see how the defendants can reasonably argue that they lacked the intent to disobey the Court's orders. Defendants had knowledge of the orders, yet they continuously refused to take any action whatsoever, and moreover even acknowledge that they have not responded in an ideal manner. Furthermore, it is apparent that the defendants only decided to participate in this case when $344,064.67 of their money was seized in December of 2005. Defendants cannot seriously expect the Court to believe that they lacked the intent to disobey the orders that were handed down.

Last, defendant Mehta argues that he has faced several hardships during the months that the orders were issued. Mehta contends that when he first pursued these franchises, he had the aid of an experienced business partner, but later was required to manage the franchises alone. He adds that his ability to participate in this litigation has been hampered by injuries sustained in two accidents. While the Court is sympathetic to whatever hardships defendant Mehta has faced, the hardships described do not justify his continuous and deliberate disregard of a case that has been pending against him in this District since January of 2005. Defendants have not demonstrated such extreme personal circumstances as to justify their neglect of the orders entered in this case.

Plaintiff has shown by clear and convincing evidence that the defendants are guilty of civil contempt. Plaintiff's motion to adjudge the defendants in contempt of the August 24th Judgment, and to enforce the litigant's rights is granted.

## II.     Defendants' Motion to Vacate Default Judgment and Compel the Return of $344,000.00 in Levied Monies

Defendants have moved under Fed. R. Civ. P. 55(c), or alternatively, Fed. R. Civ. P. 60(b)(1) and 60(b)(6), to vacate the default judgment. Rule 55(c) provides that, "[f]or good cause

**NOT FOR PUBLICATION**

shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Fed. R. Civ. P. 55(c). Because default judgment has been entered in this case, this Court must consider whether the default judgment can be vacated under Rule 60(b)(1) or 60(b)(6).

  A. Standard

Rule 60(b) provides that "on motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding ... [for] (1) mistake, inadvertence, surprise, or excusable neglect; or (6) any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b)(1) & (6). "The motion shall be made within a reasonable time, and for reason[] (1)...not more than one year after the judgment, order, or proceeding was entered or taken." Fed. R. Civ. P. 60(b).

Courts in this circuit are instructed that, when "passing upon default judgments, Rule 60(b) should be 'given a liberal construction [and] any doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on the merits.'" Feliciano v. Reliant Tooling Co., 691 F.2d 653, 656 (3d Cir. 1982) (quoting Tozer v. Charles A Krause Milling Co., 189 F.2d 242, 245 (3d Cir. 1951)). The decision whether to vacate "a default judgment pursuant to Rule 60(b) is left primarily to the discretion of the district court." United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194 (3d Cir. 1984) (citation omitted). When determining whether to vacate a default judgement, a court must consider the following factors: (1) whether the defendant has a meritorious defense; (2) whether culpable conduct of the

**NOT FOR PUBLICATION**

defendant led to the default; and (3) whether the plaintiff will be prejudiced. Harad v. Aetna Cas. & Sur. Co., 839 F.2d 979, 982 (3d Cir. 1988).

  B. Analysis

  Defendants argue that the default judgment should be vacated under either Rule 60(b)(1), which authorizes the Court to give relief from a judgment for "mistake, inadvertence, surprise, or excusable neglect," or under the catchall Rule 60(b)(6), which permits such relief for "any other reason justifying relief from the operation of the judgment." Defendants have not explicitly stated what exactly constitutes the "mistake, inadvertence, surprise, or excusable neglect" in this case, or what is exactly the "other reason justifying relief from the operation of the judgment." However, the Court infers that defendants are arguing the motion to vacate should be granted because legally, the judgment should not have contained an award of future lost profits to plaintiff.

  The August 24th Judgment awards damages to the plaintiff for both past and future lost profits.[1] The judgment states that "New Jersey state law has not directly addressed the ability of a franchisor to recover future lost revenues under a franchise agreement that has been breached, however, a similar damage theory was approved in a case of a franchisor against its supplier." Dunkin' Donuts v. Arkay Donuts, LLC, et al., No. 05-387, Order at 8 (D.N.J. August 24, 2005) (citing Lightning Lube, Inc. v. Venuto, 4 F.3d 1153, 1174-1179 (3d Cir. 1993)). Lightning Lube, however, pertains to a factual scenario slightly different from this case. There, a franchisor

---

[1] In its trial brief of July 22, 2005, plaintiff stated that damages for past royalties and advertising fees amounted to $103,991.87, and that damages for future royalties and advertising fees amounted to $555,443.61.

**NOT FOR PUBLICATION**

was awarded future lost profits from a supplier, not from a franchisee. It follows that the award of future lost profits to a franchisor from a franchisee is not based on any settled precedent in New Jersey.

Defendants have cited multiple cases where future lost profits were not awarded under franchise agreements where, as in this case, the agreement was terminated by the franchisor, even when the breach was caused by the franchisee's failure to make royalty payments. Kissinger, Inc. v. Singh, 304 F.Supp. 2d 944 (W.D. Mich. 2003); Postal Instant Press, Inc. v. Sealy, 43 Cal. App. 4th 1704 (1996); Burger King Corp. v. Hinton, Inc., 203 F.Supp.2d 1357, 1366 (S.D. Fla. 2002); I Can't Believe It's Yogurt v. Gunn, 1997 WL 599391, at *23-24 (D. Colo. Apr. 15, 1997). Generally speaking, these cases found that the franchisees' breaches were not proximately connected to the lost future royalty payments, but rather, it was the franchisors' terminations that proximately caused the future losses. Indeed, the Kissinger Court noted that it could not find "any case that has reached the opposite result." Kissinger, 304 F.Supp.2d at 950. This Court finds that a legal error was committed in awarding future lost profits to the plaintiff. The question, however, is whether Rule 60(b) permits this Court to vacate the default judgment.

Plaintiff does not address the defendants' argument concerning future lost profits directly, but instead argues that the defendants' argument constitutes an appeal which is inappropriate under Rule 60(b). It is clear that Rule 60(b)(6) cannot be employed to vacate the default judgment in this case. While Rule 60(b)(6) "is a grand reservoir of equitable power to do justice in a particular case," the Rule does "not confer upon the district courts a 'standardless residual discretionary power to set aside judgments.' " Martinez-McBean v. Gov't of Virgin Islands, 562

**NOT FOR PUBLICATION**

F.2d 908, 911 (3d Cir.1977) (citations omitted).  "Rule 60(b)(6) is available only in cases evidencing extraordinary circumstances," and "courts must be guided by the well established principle that a motion under Rule 60(b) may not be used as a substitute for appeal."  Id. (citations omitted) (internal quotations omitted).  "[I]t is improper to grant relief under Rule 60(b)(6) if the aggrieved party could have reasonably sought the same relief by means of appeal."  Id. (citations omitted).  Defendants in this case could have challenged the award of future lost profits by means of appeal.  However, they elected not to appeal, and in fact, elected to not participate in the case until money was seized from their bank accounts.  Under such circumstances, Rule 60(b)(6) cannot be invoked to vacate the default judgment.

The next question is whether a legal error may be corrected under Rule 60(b)(1).  In Page v. Schwieker, 786 F.2d 150, 155 & n. 3 (3d Cir. 1986), the Third Circuit set forth the prevailing positions of other circuits on this issue: "some courts have held that legal error without more cannot be corrected under Rule 60(b)[, o]thers have held that legal error may be characterized as 'mistake' within the meaning of Rule 60(b)(1), but only where the motion is made...within the time allowed for appeal."  Page, 786 F.2d at 154-155 (citations omitted).  The Circuit added that these positions were justified "under well-established principles [that] Rule 60(b) is not a substitute for an appeal" and explained that "[w]ere the rule otherwise, the time limitations on appeal set by Fed. R. App. P. 4(a), and on motions to alter or amend judgments under Fed. R. Civ. P. 59(e) would be vitiated."  Id. at 154.  However, because the Circuit decided Page on other grounds, it stated that "[t]his court has yet to decide this issue, and we do not do so now."  Id. at 155.

**NOT FOR PUBLICATION**

In <u>James v. Virgin Islands Water and Power Authority</u>, 119 Fed.Appx. 397, 401 (3d Cir. 2005), the Circuit again addressed the question of whether legal error may be corrected under Rule 60(b)(1). The Circuit stated that the ability to correct legal error through Rule 60(b)(1) seemed to be foreclosed by <u>United States v. Fiorelli</u>, 337 F.3d 282, 288 (3d Cir. 2003) and <u>Smith v. Evans</u>, 853 F.2d 155, 158 (3d Cir. 1988): a "Rule 60(b) motion may not be used as a substitute for an appeal, and that legal error, without more, does not warrant relief under that provision." The Circuit added in <u>James</u> that "[a]t most, <u>Page</u> could be read to allow for the possibility that legal error could be addressed under Rule 60(b)(1) *if* a motion is made before the time for appeal has run." <u>James</u>, 119 Fed.Appx. at 401 (emphasis added).

Fed. R. App. P. 4(a) provides that the notice of appeal must be filed "within 30 days after the judgment or order appealed from is entered." The default judgment was entered in this case on August 25, 2005. The deadline for filing a notice of appeal expired on September 26, 2005, yet defendants did not file their motion to vacate until January 25, 2006, nearly four months after the deadline for notice of appeal had passed. Nor have defendants identified any extraordinary circumstances justifying the lateness of this motion. This is precisely the set of circumstances that Rule 60(b) seeks to guard against - using the rule as a method to avoid the time limitations for appeals. It follows that defendants motion fails even under the most lax circuit interpretation of Rule 60(b)(1).

**III.** *Sua Sponte* **Amendment of the Default Judgment**

Having determined that this Court may not vacate the default judgment on the defendants' motion under Rule 60(b), this Court must consider whether it has the authority under

**NOT FOR PUBLICATION**

Rule 60(b) to amend, *sua sponte*, an erroneous award of damages in a default judgment. This issue appears to be one of first instance in the Third Circuit, and other circuits are split on the issue. The Sixth and Tenth Circuits have held that Rule 60(b) requires a motion by a party, and that a district court may not *sua sponte* grant relief pursuant to Rule 60(b). See United States v. Pauley, 321 F.3d 578, 581 & n. 1 (6th Cir. 2003) (because Rule 60(b) explicitly requires relief under the rule to occur "on motion," courts may not grant such relief except upon "a motion from the affected party."(citation omitted)); Dow v. Baird, 389 F.2d 882, 884 (10th Cir. 1968) (whereas Rule 60(a) permits the district court to correct clerical errors "of its own initiative," Rule 60(b) permits corrections only upon motion). The Second, Fourth, Fifth and Ninth Circuits have held that Rule 60(b) does permit a district court to grant relief *sua sponte*. See Fort Knox Music Inc. v. Baptiste, 257 F.3d 108, 111 (2d Cir.2001) ( "While normally such relief is sought by motion of a party, see Fed. R. Civ. P. 60(b), nothing forbids the court to grant such relief *sua sponte*."); Kingvision Pay-Per-View Ltd. v. Lake Alice Bar, 168 F.3d 347, 351 (9th Cir. 1999) (reasoning that although rule says "on motion," it "does not explicitly say 'by a party,' " suggesting that the relief could be on the court's own motion); McDowell v. Celebrezze, 310 F.2d 43, 44 (5th Cir.1962) ("The Court could initiate this on its own motion."); United States v. Jacobs, 298 F.2d 469, 472 (4th Cir.1961) ("The rule need not necessarily be read as depriving the court of the power to act in the interest of justice in an unusual case in which its attention has been directed to the necessity for relief by means other than a motion."). It is an "open question" in the Eight Circuit whether a district court would have the authority to grant Rule 60(b) relief *sua sponte*. Communications, Inc. v. Paradigm Co., 336 F.3d 775, 779 (8th Cir. 2003).

**NOT FOR PUBLICATION**

Having determined that the damages award of future royalties and advertising fees was erroneous, this Court adopts the prevailing view of the majority of circuits, and holds that it has the authority to amend the damages award under Rule 60(b) *sua sponte*. Because this holding constitutes a deprivation of the plaintiff's property, the plaintiff must be provided with notice and an opportunity to be heard before the damages award can be amended.[2] See Kingvision, 168 F.3d at 352 (plaintiff was entitled to notice and a hearing before district court *sua sponte* reduced judgment).

## CONCLUSION

For the foregoing reasons, plaintiff's motion to adjudge the defendants in contempt is granted. Defendants' motion to vacate the default judgment and for the return of levied monies is denied. Plaintiff is ordered to show cause why the judgment should not be reduced.

**s/William H. Walls**
United States Senior District Judge

---

[2] Because the money that has already been levied from the defendants will, in all likelihood, be more than sufficient to satisfy the reduced judgment, defendants need not comply with the plaintiff's Information Subpoena at this time.